## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re                          :    Chapter 11

John Varvatos Enterprises, Inc. *et al*.,   :    Case No. 20-11043 (MFW)

                              :    (Joint Administration)

              Debtors.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

Tessa Knox, individually and as the   :
Certified Representative of the Class of   :
Judgment Creditors,               :

              Plaintiff,    :

                           :    Adv. Proc. 20-50623-MFW

         v.               :

Lion/Hendrix Cayman Limited,    :

            Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

James L. Bromley, Esq. (*pro hac vice*)
Jonathan M. Sedlak, Esq. (*pro hac vice pending*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000

Pauline K. Morgan, Esq. (No. 3650)
Sean T. Greecher, Esq. (No. 4484)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600

Filed: June 23, 2020

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF ALLEGED FACTS ..................................................................... 6

ARGUMENT ............................................................................................................ 8

I.      LHCL DID NOT ENGAGE IN INEQUITABLE CONDUCT .................... 11

        A.      The Complaint Fails to Plausibly Allege that LHCL "Encouraged" or "Facilitated" the Clothing Policy. .................................................. 11

        B.      JVE's Insolvency Does Not Constitute Inequitable Conduct. ............ 15

II.     PLAINTIFF FAILS TO PLEAD AN INJURY RELATED TO THE DISTRIBUTION OF THE BANKRUPTCY ESTATE ................................ 17

III.    PLAINTIFF SEEKS TO INTERFERE WITH LHCL'S RIGHTS UNDER SECTION 363(K) OF THE BANKARUPTCY CODE AND DISRUPT THE PENDING AUCTION OF JVE'S ASSETS ....................... 20

CONCLUSION ....................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advance Nanotech, Inc.*,
  2014 WL 1320145 (Bankr. D. Del. Apr. 2, 2014)................................................8

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009).................................................................................... 7-8

*Bell Atlantic Corp.* v. *Twombly*,
  550 U.S. 544 (2007)......................................................................................7, 8

*In re Champion Enters., Inc.*,
  2010 WL 3522132 (Bankr. D. Del. Sept. 1, 2010).................................10, 14, 15

*Citicorp Venture Capital, LTD* v. *Comm. of Creditors Holding
  Unsecured Claims*,
  323 F.3d 228 (3d Cir. 1998) ...........................................................................10

*Citicorp Venture Capital, LTD* v. *Comm. of Creditors Holding
  Unsecured Claims*,
  323 F.3d 228 (3d Cir. 2003) ................................................................ 8-9, 10, 7

*In re Energy Future Holdings Corp.*,
  546 B.R. 566 (Bankr. D. Del. 2016)....................................................................7

*In re Epic Capital Corp.*,
  290 B.R. 514 (Bankr. D. Del. 2003).................................................................10

*In re Evergreen Solar, Inc.*,
  2014 WL 300965 (Bankr. D. Del. Jan. 28, 2014)...............................................11

*In re First Alliance Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) .......................................................................9, 18

*In re Herby's Foods, Inc.*,
  2 F.3d 128 (5th Cir. 1993) .....................................................................15, 16, 19

*In re HH Liquidation, LLC*,
  590 B.R. 211 (Bankr. D. Del. 2018).......................................................3, 8, 14, 15

*Knox* v. *John Varvatos Enters., Inc.*,
  17-cv-772, (S.D.N.Y.) ...............................................................................*passim*

*In re M. Paolella & Sons, Inc.*,
  161 B.R. 107 (E.D. Pa. 1993), *aff'd*, 37 F.3d 1487 (3d Cir. 1994) ......................8

*In re Mid-Am. Waste Sys. Inc.*,
  284 B.R. 53 (Bankr. D. Del. 2002)...........................................................4, 5, 9

*In re Optim Energy, LLC*,
  527 B.R. 169 (D. Del. 2015).....................................................................17, 18

*In re Washington Mut., Inc.*,
  575 B.R. 609 (Bankr. D. Del. 2017)..................................................................8

*In re Winstar Commc'ns*,
  554 F.3d 382 (3d Cir. 2009) .............................................................................8

## PRELIMINARY STATEMENT

Plaintiff[1] seeks to equitably subordinate a portion of defendant Lion/Hendrix Cayman Limited's ("LHCL") prepetition secured claims against John Varvatos Enterprises, Inc. ("JVE"). The Knox Class seeks this extraordinary relief in a desperate attempt to hold hostage LHCL's section 363 stalking horse credit bid to the completely unrelated—and unsecured—claims of the Knox Class. This effort fails on every level.

The Knox Class's threadbare complaint (the "Complaint") is a mishmash of allegations that fails to satisfy any of the three prongs of the equitable subordination standard. The Complaint establishes no viable connection between LHCL and any inequitable conduct and shows no harm to the Knox Class caused by LHCL, whether directly or indirectly. Moreover, the Complaint intentionally blurs the important legal distinctions between LHCL, its non-debtor affiliates and their respective representatives; and it relies entirely on counsel's own *closing argument* before the New York Court while ignoring the actual trial testimony that guts their causes of action. The Complaint starts—and ends—with the unsupported allegation

---

[1]     Plaintiff is Tessa Knox, individually and as class representative of the plaintiffs ("Plaintiff" or "Knox Class"), in *Knox* v. *John Varvatos Enters., Inc.* (the "New York Action") in the Southern District of New York (the "New York Court"). Counsel to the Knox Class ("Class Counsel") is also one of the largest creditors of JVE, having filed a motion (the "Fee Motion") with the New York Court seeking legal fees in excess of $1.7 million. Together with the judgment in the New York Court, the Knox Class and Class Counsel seek approximately $5.2 million from JVE (together, the "Knox Claims").

that LHCL "encouraged" and "facilitated" JVE's policy (the "Clothing Policy") of providing a clothing benefit to male sales employees, while not offering a comparable benefit to female sales employees. (Compl. ¶¶ 27, 45.) However, when the static is removed, the Complaint rests on nothing more than speculation and wishful thinking. Having failed to make a single allegation against LHCL in the New York Action and having failed over the course of a five-day jury trial on liability in the Southern District of New York to ask a single question concerning LHCL, its non-debtor affiliates or its representatives, the Knox Class here similarly fails to satisfy its equitable subordination pleading burden. As such, this Court should dismiss the Complaint.

*First*, the Knox Class fails to show that LHCL engaged in any sort of inequitable conduct, particularly the sort of conduct that would justify the extraordinary remedy of equitable subordination. Plaintiff alleges that "Lion"[2] "encouraged" and "facilitated" the violations at issue in the class action litigation. (Compl. ¶ 27.) But the only support for this assertion is a misleading summary of

---

[2]     In the Complaint, the Knox Class refers only once to LHCL, the entity that is party to the Asset Purchase Agreement with the jointly administered debtors, dated as of May 6, 2020 (the "APA"), and that holds the secured debt that is to be credit bid under the APA, which secured debt the Knox Class seeks to equitably subordinate. *See In re John Varvatos Enterprises, Inc.*, No. 20-11043, Dkt. 21 Ex. B (Bankr. D. Del.). All other references in the Complaint are to the undifferentiated term "Lion", which the Knox Class defines to be "defendant Lion/Hendrix Cayman Limited (together with its affiliates, except the jointly administered debtors ('Lion')," (Compl. Preamble), and the similarly ambiguous "head of Lion." (Compl. ¶ 28.)

four lines of trial testimony from Ann Byron, JVE's Vice President of Human Resources, and a quote from the *closing argument* at trial.  (Compl. ¶¶ 13, 28.)  The actual trial *testimony* shows that the Clothing Policy was in place well before LHCL acquired JVE and that LHCL was not consulted about the Clothing Policy or its legality.   Also, Ms. Byron's referenced testimony did not relate to the Clothing Policy, but rather was focused solely on the availability of a discount at AllSaints stores to JVE's female sales employees and  "the possibility of wanting to provide . . . female associates with a [clothing] benefit since [JVE] did not produce any clothing for female associates."  *Knox* v. *John Varvatos Enters., Inc.*, 17-cv-772, ECF No. 342 at 397:1-9 (S.D.N.Y.).  This testimony—the sum total of the "facts" offered by the Knox Class as to LHCL's involvement in the Clothing Policy after three years of litigation, extensive discovery and a five-day jury trial on liability— simply is insufficient for the Court to infer reasonably that LHCL in any way "encouraged" or "facilitated" the Clothing Policy.

The attempt by the Knox Class to treat the fact of JVE's bankruptcy filing as evidence that JVE was intentionally undercapitalized by LHCL similarly is insufficient to constitute the inequitable conduct required to justify equitable subordination.  *See In re HH Liquidation, LLC*, 590 B.R. 211, 298 (Bankr. D. Del. 2018) ("[U]ndercapitalization without evidence of deception about the debtors' financial condition or other misconduct [is not inequitable conduct]." (citation and

internal quotation marks omitted)).  The Complaint is devoid of facts alleged to support either the proposition that JVE was "grossly undercapitalized for years" (Compl. ¶¶ 21, 41), or that any undercapitalization was caused intentionally by LHCL, let alone for the purpose of avoiding payment of the class action judgment. Not only does such a thesis ignore the substantial equity investment in JVE that LHCL has lost, it also ignores the nearly $95 million in secured debt financing that LHCL provided to JVE.  Without LHCL"s funding, the most reasonable inference to be drawn is not that LHCL was scheming to harm the Knox Class, but rather that JVE would not have survived, and those in the Knox Class would not have been employed by JVE.  Intentional undercapitalization simply is logically inconsistent with LHCL's substantial investments.  Moreover, the Knox Class judgment was entered just over two months before these chapter 11 cases were filed, which is fatal to the argument that any of the LHCL secured debt was advanced with the intention of damaging the Knox Class.[3]

  *Second*, the Knox Class fails to plead facts establishing a nexus between the alleged inequitable conduct and the injury to the relative position of the Knox

---

[3] The record is clear, on the other hand, that (a) JVE proceeded with caution with respect to the Clothing Policy as shown by Ms. Byron's un-contradicted testimony at trial that legal advice was sought and obtained that the Clothing Policy was legal, *Knox*, ECF No. 342 at 368:15-25; 369:1-14; 375:22-376:15; (b) Ms. Byron never reported to anyone at LHCL or discussed the policy with anyone at LHCL, *id.* at 347:20-348:11; and (c) the Knox Class judgment is subject both to appeal and to a motion for judgment as a matter of law or for a new trial, *Knox*, ECF Nos. 374, 377.

Claims in these bankruptcy proceedings. "The essential purpose of equitable subordination is to undo any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of distribution of the estate." *In re Mid-Am. Waste Sys. Inc.*, 284 B.R. 53, 68 (Bankr. D. Del. 2002). The Knox Claims are classic prepetition general unsecured claims, entitled to a priority just above equity pursuant to sections 503, 507 and 1129 of the Bankruptcy Code. LHCL's claims are secured claims, with all funds having been advanced and all security pledged well in advance of the entry of the judgment on the Knox Claims. Given that JVE received legal advice that the Clothing Policy violated no laws and that JVE was mounting a vigorous defense to the Knox Claims, the idea that JVE was both "grossly undercapitalized for years" and that the undercapitalization was undertaken with the intention of harming the Knox Class is fantasy. The Complaint fails to show how either LHCL's alleged encouragement of the Clothing Policy or the alleged undercapitalization of JVE has resulted in any injustice to the position of the Knox Claims in these proceedings. The Knox Class has failed to plead facts supporting how the alleged inequitable conduct—which allegations themselves fall flat—resulted in "injustice . . . in terms of distribution of the estate," *In re Mid-Am. Waste Sys.*, 284 B.R. at 68. There simply is no nexus between the alleged inequitable conduct and the Knox Claims and, as such, the Court should dismiss the Complaint.

*Third*, Plaintiff, by bringing this Complaint, seeks to interfere with LHCL's rights under section 363(k) of the Bankruptcy Code and disrupt the pending auction of JVE's assets.  The Court should reject Plaintiff's attempt.

## STATEMENT OF ALLEGED FACTS

The Knox Class commenced a class action against JVE on February 1, 2017, alleging that the Clothing Policy—which gave male sales employees the ability to obtain clothes each year at prices up to $3,000 per quarter or $12,000 a year—discriminated against female sales employees, who did not receive "a comparable benefit."  (Compl. ¶¶ 6, 9.)  The Knox Class alleged that JVE—and not LHCL or "Lion" (as defined in the instant Complaint)—violated the Federal Equal Pay Act, the New York Equal Pay Act, and the New York Human Rights Law.  (*Id.*) The Knox Class alleges that at the time the class action began—and for at least a year prior—JVE had a negative net worth and had been unable to pay its debts as they became due.  (*Id.* ¶¶ 23, 42-43.)

After three years of discovery and motion practice, a jury determined that JVE violated the Federal and New York Equal Pay Acts and the New York Human Rights Law.  (*Id.* ¶ 14.)  The jury was not presented with the question—and did not determine—whether LHCL, as JVE's parent, or some other undifferentiated "Lion" was responsible for or had any role whatsoever in the Clothing Policy. Indeed, LHCL was never named a party to the class action throughout the three-year

litigation.  No LHCL representative was called as a witness at the trial on liability.

Counsel to the Knox Class never asked a question during the New York trial on

liability about LHCL, its non-debtor affiliates or its representatives.

On March 24, 2020, Plaintiff obtained a final judgment against JVE

for $3,516,051.23, and on April 2, Plaintiff moved for costs and attorneys' fees

totaling $1,744,589.71.  (*Id.* ¶¶ 18-19.)  On April 21, JVE filed a motion for

judgment as a matter of law or new trial and subsequently filed a notice of appeal.

*Knox*, ECF Nos. 374, 377.  On May 6, JVE filed a petition for relief under chapter

11 in this Court (Compl. ¶ 20), and the class action litigation (including the appeal

and motion for judgment as a matter of law or new trial) was stayed automatically

pursuant to § 362(a) of the Bankruptcy Code.  *Knox*, ECF No. 390.  Coincident

with chapter 11 filing, LHCL entered into an "asset purchase agreement with

[JVE]" in which JVE would sell its assets to LHCL, "through [LHCL's] credit bid

of $76,000,000."  (Compl. ¶ 25.)[4]

On June 8, 2020, Plaintiff filed this complaint seeking equitable

subordination of LHCL's secured claims, claiming that LHCL "encouraged" and

"facilitated" JVE's Clothing Policy.  (Compl. ¶¶ 27, 34.)  On June 16, 2020, the

---

[4]     The cash portion of the purchase price is also coming from LHCL and is intended to
provide recovery to certain secured creditors.

Complaint, by agreement, was served on counsel to LHCL. *Knox* v. *Lion/Hendrix Cayman Ltd.*, 20-50623, ECF No. 3 (Bankr. D. Del.).

## ARGUMENT

To survive a motion to dismiss, a complaint must "contain either direct or indirect allegations respecting all the material elements necessary to sustain recovery under some *viable* legal theory." *In re Energy Future Holdings Corp.*, 546 B.R. 566, 576 (Bankr. D. Del. 2016) (internal quotation marks and citation omitted) (emphasis in original). The mere possibility that a plaintiff might prove some facts in support of its claims is insufficient to survive a motion to dismiss. *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). Dismissal is appropriate where a plaintiff fails "to raise a right to relief above the speculative level." *Id.* at 555. "A pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557) (internal citation omitted) (alteration in original). "Ultimately, a Rule 12(b)(6) motion is a context-specific analysis that allows a court to draw on its 'judicial experience and common sense.'" *In re Washington Mut., Inc.*, 575 B.R. 609, 615 (Bankr. D. Del. 2017) (Walrath, J.) (quoting *Iqbal*, 556 U.S. at 679). This is well-settled law under *Iqbal*, *Twombly*, and their progeny.

Equitable subordination is "an extraordinary remedy which is applied sparingly," *In re HH Liquidation, LLC*, 590 B.R. at 298 (citation and internal quotation marks omitted), because it represents a "departure from the usual principles of equality of distribution and preference for secured creditors." *In re M. Paolella & Sons, Inc.*, 161 B.R. 107, 117 (E.D. Pa. 1993) (citation and internal quotation marks omitted), *aff'd*, 37 F.3d 1487 (3d Cir. 1994). "A claim for equitable subordination has three elements: (1) inequitable conduct by the claimant; (2) resulting in injury to other creditors or an unfair advantage to the claimant; and (3) equitable subordination is consistent with the Bankruptcy Code." *In re Advance Nanotech, Inc.*, 2014 WL 1320145, at *7 (Bankr. D. Del. Apr. 2, 2014) (Walrath, J.) (citing *In re Winstar Commc'ns*, 554 F.3d 382, 411-12 (3d Cir. 2009)).

The alleged inequitable conduct "may arise out of any *unfair act* by the [defendant] as long as the *conduct affects the bankruptcy results of the other creditors*." *Citicorp Venture Capital, Ltd.* v. *Comm. of Creditors Holding Unsecured Claims*, 323 F.3d 228, 234 (3d Cir. 2003) ("*Citicorp II*") (emphasis added). An injury that neither advantages a defendant's ability to secure assets during the bankruptcy proceedings nor disadvantages the plaintiff is not an injury appropriately remedied by equitable subordination. *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 989 (9th Cir. 2006) (affirming district court's denial of equitable subordination claim where defendant's conduct "did not deplete or otherwise

adversely impact [the debtor]'s assets [and] was not related to the acquisition or assertion of its secured claim against the [debtor's] estate," notwithstanding that defendant was otherwise found liable for aiding and abetting debtor's fraud). Indeed, a nexus between the inequitable conduct and the bankruptcy results is necessary because "[t]he essential purpose of equitable subordination is to undo any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of distribution of the estate." *In re Mid-Am. Waste Sys.*, 284 B.R. at 68; *see also In re First Alliance Mortg. Co.*, 471 F.3d at 1007 ("[Defendant]'s activities were not carried out in contemplation of the later-filed . . . bankruptcy, and . . . [defendant's] conduct was not a contributing factor to bringing about the bankruptcy or determining the ordering of creditors to the bankruptcy estate."); *Citicorp II*, 323 F.3d at 233-34 ("The doctrine of equitable subordination is *remedial*, and the goal is to undo or to offset any inequality in the *claim position of a creditor* that will produce injustice or unfairness to other creditors *in terms of the bankruptcy results*." (emphasis added) (citation and internal quotation marks omitted)).

The requirement that equitable subordination not be inconsistent with the provisions of the Bankruptcy Code "has been read as a reminder to the bankruptcy court that although it is a court of equity, it is not free to adjust the legally valid claim of an innocent party who asserts the claim in good faith merely because

the court perceives the result is inequitable." *Citicorp Venture Capital, Ltd.* v. *Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982, 990 (3d Cir. 1998) ("*Citicorp I*") (citation and internal quotation marks omitted).

## I.   LHCL DID NOT ENGAGE IN INEQUITABLE CONDUCT

### A.   The Complaint Fails to Plausibly Allege that LHCL "Encouraged" or "Facilitated" the Clothing Policy.

There are three categories of behavior that may constitute inequitable conduct:  "1) fraud, illegality, or breach of fiduciary duties; 2) undercapitalization; and 3) [defendant]'s use of the debtor[] as a mere instrumentality or ego." *In re Epic Capital Corp.*, 290 B.R. 514, 524 (Bankr. D. Del. 2003).  "[C]ourts commonly hold that equitable subordination must be based on the claimant's own acts." *In re Champion Enters., Inc.*, 2010 WL 3522132, at *10 (Bankr. D. Del. Sept. 1, 2010) (collecting cases).

Plaintiff alleges in conclusory fashion that an undifferentiated Lion "encouraged" and "facilitated" the Clothing Policy.  (Compl. ¶ 27.)  No reference is made to LHCL specifically.  In support of this allegation, Plaintiff purports to rely on trial testimony from JVE's former Vice President of Human Resources, Ann Byron.  Plaintiff states:

> At the trial of the Sex Discrimination Class Action= . . . Ann Byron – who was proposing a clothing allowance for women sales professionals – testified that the "head of lion" had discussed the Clothing Allowance [P]olicy with Mr. John Varvatos in 2013 and that they agreed that they would simply offer women sales professionals a 50 percent discount off

the full retail price of certain clothes at another store in Lion's Fund III portfolio, AllSaints."

(Compl. ¶ 28.)

But this was not Ms. Byron's testimony on this point and it ignores additional related testimony from Ms. Byron. At trial, the following exchange occurred:

> Q. Ms. Byron, do you recall when the AllSaints discount policy was instituted?
> A. I believe it was talked about potentially or instituted in 2013.
> Q. And how did it come to be put in place?
> A. The head of L[i]on Capital and John Varvatos spoke about the possibility of wanting to provide our female associates with a benefit since we did not produce any clothing for female associates.
> Q. Thank you.

*Knox*, ECF No. 342 at 397:1-10.[5]

This is not testimony that LHCL created the Clothing Policy. This is not testimony that LHCL approved the Clothing Policy. This is not testimony that LHCL was consulted about the pros and cons of the Clothing Policy or its legality. This is not testimony that LHCL knew about the Clothing Policy, encouraged the policy, or stood to benefit in any way from the Clothing Policy. This is only

---

[5]    *See In re Evergreen Solar, Inc.*, 2014 WL 300965, at *1 (Bankr. D. Del. Jan. 28, 2014) (courts may consider "matters of public record" and "indisputably authentic documents that are referenced in or relied upon by the complaint" when deciding a motion to dismiss (citation omitted)). Here, because the Complaint cites to and relies on the transcript of the trial before the New York Court, the entirety of the trial transcript is available to this Court in considering the sufficiency of the equitable subordination Complaint.

testimony that indicates that the "head of L[i]on Capital" spoke with John Varvatos about a discount at AllSaints for JVE's female sales associates and nothing more.

There was no other testimony at the trial on liability regarding either LHCL itself or even an undifferentiated "Lion" other than a passing statement by Ms. Byron that AllSaints was affiliated with an entity related to the owner of JVE. *See id* at 393:6-7. Notably, there was no cross-examination of Ms. Byron, even though her direct examination closed shortly after her above testimony. *Id.* at 406. The Complaint references no other trial testimony in support of the allegation that "Lion" or LHCL "encouraged" or "facilitated" JVE's Clothing Policy. Indeed, "Lion" is only mentioned in passing a grand total of three times during the five-day liability trial, one of which was during closing argument by counsel to the Knox Class. *Id.* ECF No. 342 at 393:6, 397:6; ECF No. 346 at 597:14-21. Quite simply, Ms. Byron's isolated comment about "the possibility of wanting to provide . . . female associates with a benefit" does not support a reasonable inference that LHCL encouraged or facilitated the Clothing Policy.[6]

The Complaint fails to mention Ms. Byron's testimony that the Clothing Policy was in place since at least 2012. *Knox*, ECF No. 342 at 357:2-5. Moreover, the Complaint completely ignores the testimony of Steven Shears, the

---

[6]    Indeed, it is telling that Plaintiff did not assert any claims against LHCL for the conduct of JVE during the class action and, even after three years of litigation, is unable to put forward any facts that would justify imputing JVE's actions or policies to LHCL.

witness who followed Ms. Byron to the stand on February 26, 2020, whose

uncontested testimony was that the Clothing Policy existed when he joined JVE in

2009. *Id.* at 406:5-6, 410:10-15. Therefore, there is no doubt that the Clothing

Policy had been implemented by JVE *prior* to LHCL's acquiring JVE in April 2012.

(*See* Compl. ¶ 24.)

Furthermore, there is uncontroverted testimony from Ms. Byron at trial

that she, as the head of JVE's HR function, sought and obtained legal advice as to

the legality of the Clothing Policy.

> Q.  So, Ms. Byron, did there come a time when you consulted with an
> outside attorney regarding the issue of whether [JVE] giving a clothing
> allowance to male sales professionals and not female sales
> professionals would be legal under U.S. law?
> A.  Yes.
> Q.  What was that?
> A.  In probably late 2013 or January of 2014.
> Q.  Did you personally have a conversation with the outside attorney
> and just limit your answer to a yes or no?
> A.  Yes.
> Q.  And after that conversation did you feel confident that [JVE] was
> not violating any U.S. laws regarding discrimination by providing the
> clothing allowance to male sales professionals only?
> A.  Yes.

*Knox*, ECF No. 342 at 368:15-369:5.

The Knox Class has not only failed to plead sufficient facts to support

a reasonable inference that LHCL "encouraged" or "facilitated" JVE's Clothing

Policy, but has omitted substantial and highly relevant testimony by the very witness,

Ms. Byron, on whom the Knox Class rests the entirety of its equitable subordination allegations.

The Knox Class also alleges that LHCL knew about the Clothing Allowance policy or, alternatively, "decided to blind its eyes from" the policy. (Compl. ¶¶ 39-40.)  But once again, the Complaint speaks not to LHCL, but only to the undifferentiated "Lion."  Even if that were sufficient, and it is not a matter of basic pleading, mere knowledge of JVE's Clothing Policy is insufficient as a matter of law to justify equitable subordination because "equitable subordination must be based on the [defendant]'s *own acts*."  *In re Champion*, 2010 WL 3522132, at *10 (emphasis added); *see also In re HH Liquidation, LLC*, 590 B.R. at 300 (denying a claim for equitable subordination because the complaint did "not even allege that the [defendant] engaged in any inequitable conduct; rather, it claim[ed] that [an affiliate] engaged in inequitable conduct, and that conduct should be imputed to the [defendant]").  The Knox Class has failed to allege facts sufficient to support an inference that LHCL "dominated and controlled" JVE such that the "conduct should be imputed to" LHCL and its claim for equitable subordination should therefore be dismissed.  *In re Champion*, 2010 WL 3522132, at *10 (citation omitted).

**B.    JVE's Insolvency Does Not Constitute Inequitable Conduct.**

Plaintiff also alleges without factual support that the undifferentiated "Lion" had "grossly undercapitalized" JVE so that "[JVE] could seek to avoid

paying any judgment" to the Plaintiff and that LHCL is now "using . . . undercapitalization as a shield to attempt to avoid paying any compensation." (Compl. ¶¶ 41, 44.)    Leaving aside the question of whether JVE was undercapitalized, particularly in the current retail environment, the mere fact that a company is undercapitalized is insufficient to support a claim for inequitable subordination. *See In re HH Liquidation*, 590 B.R. at 298 ("[U]ndercapitalization without evidence of deception about the debtors' financial condition or other misconduct [is not inequitable conduct]." (citation and internal quotation marks omitted)); *see also In re Herby's Foods, Inc.*, 2 F.3d 128, 132 (5th Cir. 1993) ("Even though undercapitalization alone generally does not justify equitable subordination, evidence of additional inequitable conduct may do so.").

There are no facts in the Complaint to support Plaintiff's contention that an undifferentiated "Lion" purposely undercapitalized JVE for any reason, let alone to avoid paying out a judgment that only arose two months before the Petition Date.  Indeed, the Complaint asserts that JVE had a negative value of $60 million a year *prior* to the New York Action being commenced.    (Compl. ¶¶ 23, 43.) Moreover, the Complaint acknowledges that other factors, including Plaintiff's lawsuit, contributed to JVE's bankruptcy. (Compl. ¶ 21 ("While the judgment in the [class action] may have played a role in the [bankruptcy] filing, JVE had been grossly undercapitalized for years.").)  This belies Plaintiff's baseless contention that

-16-

an undifferentiated "Lion" was engaged in financial gamesmanship to avoid paying a judgment to the Plaintiff, again keeping in mind that no contention is made in the Complaint as to LHCL's role or responsibility in any of the alleged misdeeds.  *Cf. In re Herby's Foods*, 2 F.3d at 132 (granting equitable subordination where "with full knowledge that [the debtor] was undercapitalized and insolvent, the [defendants] persisted with their practice of advancing funds only in the form of loans.").  And, of course, the Knox Class completely ignores the unprecedented challenges facing the retail sector, which both pre-dated and have been exacerbated by the COVID-19 pandemic.  That LHCL created and nurtured over a course of years a capital structure that undercapitalized JVE to LHCL's own detriment and did so with an intent to harm the Knox Class is pure sophistry.

Plaintiff has failed to sufficiently plead facts showing that LHCL engaged in inequitable conduct, and the Complaint should therefore be dismissed.

## II.    PLAINTIFF FAILS TO PLEAD AN INJURY RELATED TO THE DISTRIBUTION OF THE BANKRUPTCY ESTATE

Plaintiff's Complaint should be dismissed solely for its failure to plead facts showing that LHCL engaged in inequitable conduct.  But even if the Knox Class had sufficiently pleaded facts showing inequitable conduct—which it has not—the Complaint should still be dismissed because the Knox Class has failed to plead facts showing that the inequitable conduct has affected its position as a creditor in bankruptcy.  As discussed above, the "goal" of equitable subordination "is to undo

-17-

or to offset any inequality in the *claim position of a creditor* that will produce injustice or unfairness to other creditors in terms of the bankruptcy results." *Citicorp II*, 323 F.3d at 233-34 (citation and internal quotation marks omitted); *see also In re Optim Energy, LLC*, 527 B.R. 169, 177-78 (D. Del. 2015) (affirming dismissal of claim for equitable subordination where defendant had not "achieved [its] legitimate [bankruptcy] position through illegitimate means."). Accordingly, there must be a nexus between the inequitable conduct and the distribution from the bankruptcy estate to the creditor alleging harm.

Courts have used equitable subordination when the defendant-creditor has engaged in unfair conduct that results in a disadvantage to other creditors or a benefit to the defendant-creditor. For example, courts have found equitable subordination of claims justified when defendants have "attempted to convert their equity interests into secured debt in anticipation of bankruptcy," converted unsecured debt to secured debt "in order to leap-frog over another creditor in anticipation of bankruptcy," or "with knowledge of the debtor's undercapitalization, used the debtor to repay themselves first, and then extended additional credit on a secured basis to exchange [their] equity interest." *In re Optim Energy*, 527 B.R. at 177 (collecting cases) (internal quotation marks, citations, and alteration omitted). In contrast, Plaintiff has not alleged facts showing how LHCL, as opposed to an undifferentiated Lion (though no sufficient facts have been alleged on that front

-18-

either), was involved in creating, approving, or overseeing JVE's Clothing Policy or that the alleged undercapitalization of JVE resulted in either an advantage for LHCL or a disadvantage for the Knox Class.

In an analogous Ninth Circuit case, the debtor's fraudulent lending practices resulted in two separate class actions against the debtor's lender, Lehman Brothers ("Lehman"). *In re First Alliance Mortg. Co.*, 471 F.3d at 983. Lehman was found liable for aiding and abetting the fraud, but the Ninth Circuit affirmed the district court's holding that Lehman's fraudulent conduct did not warrant equitable subordination because "Lehman's activities were not carried out in contemplation of the later-filed . . . bankruptcy, and . . . Lehman's conduct was not a contributing factor to bringing about the bankruptcy or determining the ordering of creditors to the bankruptcy estate." *Id.* at 1007. In short, "Lehman did nothing to improve its status as a creditor at the expense of any other creditor." *Id.* Similarly, here the Knox Class's Complaint is devoid of facts that LHCL's alleged involvement in the Clothing Policy gave an advantage to LHCL at the expense of Plaintiff's position in the distribution of the bankruptcy estate.

Nor does any alleged undercapitalization of JVE justify equitable subordination of LHCL's secured debt. As noted above, the Plaintiff alleges that JVE had a negative net worth for at least a year prior to the class action and for at least four years prior to the filing of bankruptcy. There are no facts in the Complaint

that remotely suggest that LHCL took advantage of JVE's economic condition in order to further its own interest at the expense of other creditors, least of all to the Knox Class. *See In re Herby's Foods*, 2 F.3d at 132 (subordinating the claims of defendants who took advantage of the undercapitalized debtor by "advancing funds only the form of loans"). Indeed, the opposite is true. LHCL's equity investment disappeared and LHCL's lent JVE over $95 million on a senior secured basis.

Because the Complaint fails to sufficiently plead facts showing an injury related to the distribution of the bankruptcy estate, the Court should dismiss the Complaint.

## III. PLAINTIFF SEEKS TO INTERFERE WITH LHCL'S RIGHTS UNDER SECTION 363(K) OF THE BANKARUPTCY CODE AND DISRUPT THE PENDING AUCTION OF JVE'S ASSETS

There can be no doubt that the equitable subordination Complaint filed by the Knox Class is a undisguised attack on LHCL's stalking horse credit bid to purchase substantially all of JVE's assets. The validity and priority of LHCL's secured debt has already been admitted by JVE and its related debtors and, as such, LHCL is entitled to credit bid its debt as permitted under section 363(k) of the Bankruptcy Code. As provided in the final order approving the debtor in possession financing in these cases, the Official Committee of Unsecured Creditors ("UCC") is in the midst of a review of the bona fides of LHCL's secured debt. To this end, LHCL has produced and continues to produce, on a voluntary basis, documents

requested by the UCC to facilitate its investigation.  The conclusion of the UCC's

investigation has been carefully calibrated to the calendar set for the submission of

bids pursuant to the order approving bidding procedures entered by this Court on

June 9, 2020 (the "Bidding Procedures Order", ECF No. 177) establishing a bid

deadline of July 13, 2020 and auction date of July 15, 2020.  Given the very tight

timeline and the importance to the bidding process of clarity as to the Knox Class's

equitable subordination Complaint, LHCL respectfully requests that the Court

expedite its decision on this Motion.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with

prejudice.

Dated:  June 23, 2020

*/s/ Sean T. Greecher*

_____

Pauline K. Morgan, Esq. (No. 3650)
Sean T. Greecher, Esq. (No. 4484)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Email:  pmorgan@ycst.com
          sgreecher@ycst.com

and

James L. Bromley, Esq. (*pro hac vice*)
Jonathan M. Sedlak, Esq. (*pro hac vice
pending*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Email:  bromleyj@sullcrom.com
          sedlakj@sullcrom.com

*Attorneys for Defendant Lion/Hendrix
Cayman Limited*