# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------x
:
In re : Chapter 11
John Varvatos Enterprises, Inc. *et al*., : Case No. 20-11043 (MFW)
: (Joint Administration)
Debtors. :
:
------------------------------------x
:
Tessa Knox, individually and as the :
Certified Representative of the Class of :
Judgment Creditors, :
:
Plaintiff, :
: Adv. Proc. 20-50623-MFW
v. :
:
Lion/Hendrix Cayman Limited, :
:
Defendant. :
:
------------------------------------x

## DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF
## ITS MOTION TO DISMISS

| | |
|---|---|
| James L. Bromley, Esq. (*pro hac vice*) | Pauline K. Morgan, Esq. (No. 3650) |
| Jonathan M. Sedlak, Esq. (*pro hac vice*) | Sean T. Greecher, Esq. (No. 4484) |
| SULLIVAN & CROMWELL LLP | YOUNG CONAWAY STARGATT & |
| 125 Broad Street | TAYLOR, LLP |
| New York, New York 10004 | Rodney Square |
| Telephone: (212) 558-4000 | 1000 North King Street |
| | Wilmington, Delaware 19801 |
| Filed: July 8, 2020 | Telephone: (302) 571-6600 |

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT .............................................................................................................4

I. PLAINTIFF'S COMPLAINT IS BASED ON CONJECTURE. .....................4

II. PLAINTIFF PLEADS NO NEXUS BETWEEN ITS ALLEGED INJURY AND THE DISTRIBUTION OF THE BANKRUPTCY ESTATE..........................................................................................................9

III. PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND THE COMPLAINT. ......................................................................................12

CONCLUSION ........................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Advance Nanotech, Inc.*
   2014 WL 1320145 (Bankr. D. Del. Apr. 2, 2014) (Walrath, J.) .........................11

*In re Am. Bus. Fin. Servs., Inc.*,
   362 B.R. 149 (Bankr. D. Del. 2007) ..................................................................12

*In re Amcad Holdings, LLC*,
   579 B.R. 33, 42 (Bankr. D. Del. 2017) (Walrath, J.) ...................................12, 13

*Bell Atlantic Corp.* v. *Twombly*,
   550 U.S. 544 (2007) .............................................................................................1

*Blair* v. *Infineon Tech. AG*,
   720 F. Supp. 2d 462 (D. Del. 2010) ....................................................................7

*In re Champion Enters., Inc.*,
   2010 WL 3522132 (Bankr. D. Del. Sept. 1, 2010) ......................................6, 7, 8

*Citicorp Venture Capital, Ltd.* v. *Comm. of Creditors Holding
   Unsecured Claims*,
   323 F.3d 228 (3d Cir. 2003) ................................................................................9

*In re Cohn*,
   54 F.3d 1108 (3d Cir. 1995) ................................................................................7

*In re First Alliance Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) .......................................................................10, 11

*Geyer* v. *Ingersoll Publ'ns Co.*,
   621 A.2d 784 (Del. Ch. 1992) .............................................................................7

*In re HH Liquidation*, LLC,
   590 B.R. 211 (Bankr. D. Del. 2018) ............................................................1, 4, 8

*Knox* v. *John Varvatos Enters.*,
   No. 17-cv-00772 (S.D.N.Y.) ................................................................................6

*L.C. 1* v. *Delaware*,
  2008 WL 5381433 (D. Del. Dec. 23, 2008) ........................................................5

*In re M. Paolella & Sons, Inc.*,
  161 B.R. 107 (E.D. Pa. 1993) ...........................................................................1

*In re Mid-Am. Waste Sys. Inc.*,
  284 B.R. 53 (Bankr. D. Del. 2002) ....................................................................3

*In Re OODC, LLC*,
  321 B.R. 128 (Bankr. D. Del. 2005) (Walrath, J.) ............................................12

*In re Optim Energy, LLC*,
  527 B.R. 169 (D. Del. 2015) ............................................................................10

*In re Racing Sers, Inc.*,
  340 B.R. 73 (B.A.P. 8th Cir. 2006) ...................................................................9

*Ranke* v. *Sanofi-Synthelabo Inc.*,
  436 F.3d 197 (3d Cir. 2006) .........................................................................3, 6

*L.C. 1* v. *Delaware*,
  2008 WL 5381433, at *6 (D. Del. Dec. 23, 2008), *report and recommendation adopted*, 2009 WL 814631 (D. Del. Mar. 30, 2009) ............................................................................................................5

*In re Summit Metals, Inc.*,
  477 B.R. 484 (Bankr. D. Del. 2012) ................................................................13

*In re Vision Metals, Inc.*,
  311 B.R. 692 (Bankr. D. Del. 2004) (Walrath, J.) ............................................13

## PRELIMINARY STATEMENT

In its Opening Brief, Lion/Hendrix Cayman Limited ("LHCL") demonstrated that Plaintiff's Complaint fails to plead any facts that justify the "departure from the usual principles of equality of distribution and preference for secured creditors" required for equitable subordination. *In re M. Paolella & Sons, Inc.*, 161 B.R. 107, 117 (E.D. Pa. 1993). Plaintiff fails utterly to (1) allege facts sufficient to "raise[] the right to relief above a speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), (2) allege any inequitable conduct by LHCL (or any other "Lion" entity), and (3) show any nexus between the purported inequitable conduct that benefited LHCL *in its capacity as a creditor* and an injury suffered by the Knox Class *in its capacity as a creditor*.[1] Plaintiff's *Opposition to Defendant's Motion to Dismiss* ("Plaintiff's Response," "Response" or "Resp.") only confirms and crystallizes the speculative nature of the Complaint, the shell game the Knox Class plays with the facts and how fundamentally dissimilar this case is to those rare instances where courts have granted equitable subordination. *In re HH Liquidation,* LLC, 590 B.R. 211, 298 (Bankr. D. Del. 2018) ("Equitable subordination is an extraordinary remedy, which is applied sparingly.").

---

[1] LHCL incorporates the defined terms set forth in its Memorandum in Support of Defendant's Motion to Dismiss ("Def's Mem. Supp." or "Opening Brief").

*First*, once again the only inequitable conduct to which the Knox Class points is the Clothing Policy that gave rise to the New York jury verdict, the conduct *by JVE* that gave rise to the Knox Class's claim *against JVE*. The Knox Class then tries, unsuccessfully, to tie LHCL to this conduct (which is contested and subject to appeal by JVE) with unsupported allegations that "Lion" "encouraged" and "facilitated" the Clothing Policy. The only support for this tenuous link to LHCL is, again, (1) a misleading summary of four lines of testimony from the five-day liability trial and (2) class counsel's speculation during closing argument at that trial. (Resp. ¶¶ 14, 29.)

In the Response, the Knox Class points to no additional facts in the Complaint to support its claim. Rather, Plaintiff doubles down on the Complaint's conjecture, taking a full 32 paragraphs from the Complaint and repeating them virtually verbatim in the Response.[2] For example, Plaintiff admits that the Complaint does not identify to whom Ms. Byron was referring when she testified about the "head of Lion." (Resp. ¶ 53.) Nor does it even allege whether the "someone" who discussed a discount at AllSaints—and there is zero testimony about a conversation on the Clothing Policy—held a position at any Lion entity, much less a position at LHCL. Plaintiff's hope that "discovery may even reveal" that this

---

[2] Over one-third of the Response's 91 paragraphs are copied from the Complaint.

"someone" was the "head of Lion," makes clear that Plaintiff has no basis for its allegations and instead intends to engage in a "fishing expedition". *Ranke* v. *Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006). This alone warrants dismissal of the Complaint.

*Second*, Plaintiff concedes that equitable subordination requires a nexus between the alleged inequitable conduct by the defendant and some *damage to the Knox Class's position as a creditor* in the Debtors' bankruptcy estates. (Resp. ¶ 58.) Nevertheless, the Knox Class focuses solely on what gave rise to the underlying claim, and not how that claim is *damaged by any action of LHCL as a creditor*. This is the crux of any equitable subordination action. The Response makes no attempt to connect "Lion's" conduct and either any disadvantage to the Knox Class's position as a creditor or any advantage to LHCL in its position as a creditor in the bankruptcy cases. Plaintiff merely reasserts that the Knox Class was injured because "they did not receive $12,000 a year in free clothes." (Resp. ¶ 59.) This is simply irrelevant to an equitable subordination analysis.

"The essential purpose of equitable subordination is to undo any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors *in terms of distribution of the estate.*" *In re Mid-Am. Waste Sys. Inc.*, 284 B.R. 53, 68 (Bankr. D. Del. 2002) (emphasis added). It is beyond doubt that any conduct that does not cause injury in respect of a creditor's recovery *qua*

creditor cannot justify the "extraordinary remedy" of equitable subordination, *In re HH Liquidation,* LLC*,* 590 B.R. at 298.

Each of these reasons is a sufficient basis to dismiss the Complaint. Attempting to salvage its deficiency, Plaintiff requests leave to amend the Complaint. Plaintiff does not even hint at what additional facts it could plead in order to remedy its deficient complaint as required by District of Delaware Local Rule 15.1. Any amendment to the Complaint would therefore be futile. Accordingly, the Court should dismiss the Complaint with prejudice.

## ARGUMENT

### I.    PLAINTIFF'S COMPLAINT IS BASED ON CONJECTURE.

After three years of litigation in the New York Action and six days of evidence before a jury, the only support Plaintiff can muster in support of its claim that LHCL "encouraged" or "facilitated" JVE's Clothing Policy is (1) a misleading summary of four lines of Ann Byron's testimony that the "head of Lion Capital and John Varvatos spoke about the possibility of wanting to provide . . . female associates with a [clothing] benefit since we did not produce any clothing for female associates," and (2) class counsel's speculation at closing argument that "someone decided" that the proposal for a women's clothing allowance was not "financially feasible." (Def's Mem. Supp. at 15-19.)

-4-

Rather pointing to additional facts in the Complaint that support its claim—because there are none—the Knox Class leans into the Complaint's conjecture. Plaintiff acknowledges that the Complaint does not identify to whom Ms. Byron was referring when she testified about the "head of Lion," much less establish that this unidentified person held any position at LHCL. (Resp. ¶ 53.) Instead of pleading facts showing that LHCL—or any other Lion entity—engaged in inequitable conduct, the Knox Class hypothesizes—based on deposition testimony not in the Complaint—that Jeff Chang *could be* the individual Mr. Byron was referring to simply because Mr. Chang was the "most senior manager of Lion Capital in the United States" during 2019. (Resp. ¶ 53 n.2.) *See L.C. 1* v. *Delaware*, 2008 WL 5381433, at *6 (D. Del. Dec. 23, 2008), *report and recommendation adopted*, 2009 WL 814631 (D. Del. Mar. 30, 2009) ("The complaint must be analyzed based on the allegations it contains and not speculation as to what allegations might be included at some later date.").

The Knox Class continues to misuse intentionally the term "Lion." In the Complaint, the Knox Class defines "Lion" as "Lion/Hendrix Cayman Limited (together with its affiliates, except the jointly administered debtors ('Lion')," (Compl. Preamble), whereas in the Response, "Lion" is defined as "Lion/Hendrix Cayman Limited ('Lion')." (Resp. Preamble.) There is zero notation of the change in nomenclature because it suits the Knox Class narrative. The Response references

"the head of Lion," "Lion's Fund III portfolio," Lion as "a private equity company with billions under management" and references to the ownership of AllSaints as being within "Lion's Fund III portfolio," all without drawing any distinction between the different legal entities to which it refers. (Resp. ¶¶ 2, 29). In doing so, the Knox Class tries to be relieved from its burden to plead facts sufficient to give rise to a reasonable inference that *LHCL* engaged in inequitable conduct. *See In re Champion*, 2010 WL 35222132, at *10 (Bankr. D. Del. Sept. 1, 2010) ("[E]quitable subordination must be based on the [defendant]'s own acts."). This is particularly unavailing given that the Knox Class focused on "Lion" throughout the damages phase of the trial, at which Mr. Zorda testified extensively about the arm's length relationship between JVE and its corporate owner and lender. *See, e.g.*, *Knox* v. *John Varvatos Enters.*, No. 17-cv-00772, ECF No. 348 at 710-15 (S.D.N.Y.). The Knox Class is not lost in the wilderness on the distinction between LHCL and its affiliates having had (and used) a clear opportunity to explore that distinction. Rather, it is intentionally muddying the waters to avoid its uncontradicted pleading burden. *See Ranke*, 436 F.3d at 204 (rejecting plaintiffs' argument that "dismissal of the complaint was premature" because "discovery may reveal that [defendants] engaged in fraud or concealment" and stating that reversing dismissal of the complaint would "be permitting [plaintiffs] to conduct a fishing expedition").

Moreover, while Plaintiff concedes that "equitable subordination must be based on the [defendant]'s *own acts*", *In re Champion Enters., Inc.*, 2010 WL 3522132, at *10, Plaintiff's argument that JVE's conduct should be imputed to LHCL because "Lion" allegedly benefited from JVE's actions entirely fails.  (Resp. ¶¶ 62-71.)  "Well-established precedent holds that in order for one company to be held responsible for the actions of a related company, it is necessary that there be sufficient facts to pierce the corporate veil."  *In re Cohn*, 54 F.3d 1108, 1116 (3d Cir. 1995).  Plaintiff fails to allege facts—or even attempt to argue—that JVE was a "mere instrumentality of or alter ego" of LHCL or any other Lion entity.  *Geyer* v. *Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992).  Plaintiff merely alleges that "Lion currently controls [JVE]'s Board of Directors, and therefore controls [JVE]."  (Compl. ¶ 24.)  This is insufficient as a matter of law.  *See Blair* v. *Infineon Tech. AG*, 720 F. Supp. 2d 462, 469 (D. Del. 2010) ("In order to succeed on an alter ego theory of liability, plaintiffs must essentially demonstrate that, in all aspects of the business, the [] corporations actually functioned as a single entity." (alteration in original) (internal quotation marks and citation omitted)); *In re Champion*, 2010 WL 3522132, at *10 ("The only factual allegation . . . tying together the two . . . entities' actions is that the same employees managed the [challenged transactions].  The Court cannot, however, infer domination and control by virtue of this single fact.").

Plaintiff does not point to any fact that would allow the Court to reasonably infer that LHCL "dominated and controlled" JVE such that the "conduct should be imputed to" LHCL. *Id.* at *10 (citation omitted); *see also In re HH Liquidation, LLC*, 590 B.R. at 300 (dismissing claim for equitable subordination because the complaint did "not even allege that the [defendant] engaged in any inequitable conduct; rather, it claim[ed] that [an affiliate] engaged in inequitable conduct, and that conduct should be imputed to the [defendant]"). For the same reason, Plaintiff's allegation that an undifferentiated "Lion" entity knew about JVE's Clothing Policy is insufficient to impute JVE's conduct to LHCL, and Plaintiff points to no case law stating otherwise. (*See* Def's Mem. Supp. at 15.) In fact, notwithstanding the bewildering footnote 1 in the Response, the trial evidence was clear that JVE sought and obtained legal advice as to the Clothing Policy.

Recognizing the inadequacies in its Complaint, Plaintiff's Response repeats the conclusory allegation—with **no** supporting facts—that an undifferentiated Lion entity undercapitalized JVE in order to "shield both [JVE] and [Lion] from compensating" the Knox Class. (Resp. ¶ 70.) But even assuming that JVE was undercapitalized, this fact alone is insufficient to support a claim for equitable subordination. *In re HH Liquidation*, 590 B.R. at 298. Further, Plaintiff's assertion is contradicted by the Complaint's allegation that JVE had a negative value

of $60 million one year *prior* to Plaintiff's commencing the New York Action. (Compl. ¶¶ 23, 43.)

## II. PLAINTIFF PLEADS NO NEXUS BETWEEN ITS ALLEGED INJURY AND THE DISTRIBUTION OF THE BANKRUPTCY ESTATE.

The Knox Class states that "Lion" engaged in inequitable conduct with respect to the Clothing Policy. (Resp. ¶¶ 58-60.) But an essential element of an equitable subordination claim is that the alleged inequitable conduct must have a nexus to the bankruptcy cases and in particular must "affect[] the bankruptcy results of the other creditors." *Citicorp Venture Capital, Ltd.* v. *Comm. of Creditors Holding Unsecured Claims*, 323 F.3d 228, 234 (3d Cir. 2003). Indeed, the Knox Class relies on *In re Racing Sers, Inc.*, 340 B.R. 73 (B.A.P. 8th Cir. 2006), which supports this principle. *See id.* at 76-77 (holding that defendant's criminal actions, which resulted in a criminal forfeiture of the debtor's property, injured the creditors because the forfeiture "left nothing for the other creditors"). The Complaint does not allege in any way that LHCL's actions resulted in LHCL obtaining a more advantageous position as a creditor or disadvantaged the Knox Class in its capacity as a creditor in these cases. This is fatal to the Knox Class's claim.

Plaintiff suggests that "Lion" obtained a more advantageous position in bankruptcy because LHCL, through its credit bid, "will purchase assets that have been inflated because [JVE] unlawfully saved money" though the Clothing Policy.

(Resp. ¶ 67.)  This is nonsensical given the clear evidence that at the same time this "benefit" of no more than $3.5 million was obtained (*see* Compl. ¶ 19), LHCL lent JVE over $95 million to allow it to remain in business.  Plaintiff simply cannot explain how LHCL's purchase of inflated assets benefits LHCL or disadvantages the Knox Class's recoveries in the Debtors' cases.  Moreover, Plaintiff's Response asserts that in fact "Lion's" actions *preserved* assets of JVE, presumably resulting in more value—not less—for distribution to JVE's creditors.  (*See* Resp. ¶¶ 65, 67.)  This case is therefore fundamentally different from cases in which, for example, a court granted equitable subordination because a defendant, knowing that the debtor was undercapitalized, "used the debtor to repay themselves first, and then extended additional credit on a secured basis to exchange [its] equity interest."  *In re Optim Energy, LLC*, 527 B.R. 169, 177 (D. Del. 2015) (collecting cases).  Indeed, as argued in LHCL's Opening Brief, the analogous case *In re First Alliance Mortgage Co.* supports dismissal because, even if Plaintiff alleged facts giving rise to a reasonable inference that LHCL engaged in inequitable conduct—which it does not—Plaintiff has not alleged any facts suggesting that LHCL, or any Lion entity, did anything "to improve its status as a creditor at the expense of any other creditor." 471 F.3d 977, 1007 (9th Cir. 2006).  In fact, LHCL consistently increased its credit exposure to JVE to its severe detriment.

Plaintiff argues that *In re First Alliance Mortgage Co.* is inapposite because it was decided after a jury trial. (Resp. ¶ 73.) This argument misses the point and the difference in the finder of fact is irrelevant to the holding of the case. *In re First Alliance Mortgage* stands for the proposition that even if a plaintiff successfully *proves* that a defendant engaged in inequitable conduct, if that conduct "was not a contributing factor to bringing about the bankruptcy or determining the ordering of creditors to the bankruptcy estate" the inequitable conduct, *as a matter of law*, is insufficient to plead a claim for equitable subordination. *Id.* at 1007. Importantly, Plaintiff does not contest this holding, which is fatal to its claims here.

Further, each of the three cases Plaintiff cites in support of its position (Resp. ¶¶ 77, 78, 81, 84) (1) is factually dissimilar to the alleged facts of this case and (2) supports dismissal of the Complaint. Indeed, these cases overwhelmingly support the undisputed legal principle that, in order to plead a claim for equitable subordination, a plaintiff must allege a nexus between the purported injury and the distribution of the bankruptcy estate.

For example, in *In re Advance Nanotech, Inc.* 2014 WL 1320145 (Bankr. D. Del. Apr. 2, 2014) (Walrath, J.), the Trustee alleged that the defendant, Owlstone, breached its fiduciary duty to the debtor by deliberately diluting the debtor's stock position in Owlstone. *Id.* at 1. Because the debtor's stock in the defendant served as collateral to $7.4 million in Senior Secured Notes, the

defendant's actions caused the debtor to become insolvent, thereby *damaging the position of the other creditors*. *Id.* at 2-4.[3] In contrast, Plaintiff has failed to allege that the purported inequitable conduct of any "Lion" entity caused harm to the Knox Class's position as a creditor in terms of the distribution it will receive from the Debtors' bankruptcy estates. Accordingly, the Court must dismiss the Complaint.

### III. PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND THE COMPLAINT.

The Court should dismiss the Complaint without leave to amend. The right to amend "is not automatic." *Averill* v. *Jones*, 152 F. Supp. 3d. 265, 266 (D. Del. 2016). A court should not allow a plaintiff to amend the complaint when there is "undue prejudice" or "futility of amendment" *In re Amcad Holdings, LLC*, 579 B.R. 33, 42 (Bankr. D. Del. 2017) (Walrath, J.) (citing *Forman* v. *Davis*, 371 U.S. 178, 182 (1962)). Here, allowing Plaintiff to amend the Complaint would cause undue prejudice to LHCL and the other creditors. Plaintiff does not dispute that time is of the essence. Indeed, Plaintiff consented to an expedited briefing schedule recognizing the pending auction for JVE's assets.

---

[3] Similarly, the other two cases that Plaintiff cites involved allegations that a defendant injured the creditors by, respectively, purposely deflating the assets of the debtor and causing the insolvency of the debtor for the defendant's own benefit. *In re Am. Bus. Fin. Servs., Inc.*, 362 B.R. 149, 154-57 (Bankr. D. Del. 2007); *In Re OODC, LLC*, 321 B.R. 128, 133-43, 141 (Bankr. D. Del. 2005) (Walrath, J.). No party has lost more money on JVE than LHCL.

In addition, any amendment to the complaint would be futile because any amendment "would not cure a deficiency in the original complaint or . . . the complaint as amended would not withstand a renewed motion to dismiss" as a matter of law. *In re Vision Metals, Inc.*, 311 B.R. 692, 701 (Bankr. D. Del. 2004) (Walrath, J.) (quoting *In re Ambulatory Med. & Surgical Health Care, Inc.*, 187 B.R. 888, 900 (Bankr. W.D. Pa. 1995)). Plaintiff's Complaint fails a matter of law because, as stated above, there are no additional facts that Plaintiff could plead that would transform this alleged injury into one that can be addressed by the extraordinary remedy of equitable subordination. *Id.* at 701 (denying leave to amend because "even if the factual averments were taken as true, [defendant] would still be entitled to judgment on the pleadings").

Moreover, to the extent that Plaintiff believes that there are additional facts that could be added to the Complaint to remedy its deficiency, it has not identified what those facts are as required by District of Delaware Local Rule 15.1. *See* Del. Bankr. L.R. 7001-1 (acknowledging that the District Court Rules, in conjunction with the Federal Rules of Civil Procedure and the Local Bankruptcy Rules, govern adversary proceedings); *see In re Amcad Holdings, LLC*, 579 B.R. at 42 (denying leave to amend where plaintiff "has not presented any argument that an amendment" would remedy the complaint's deficiency); *In re Summit Metals, Inc.*, 477 B.R. 484, 503 (Bankr. D. Del. 2012) ("Leave to amend the Complaint is denied

since [plaintiff] has failed to provide specific information regarding how he could amend the Complaint as to comply with the applicable pleading requirements.")

## **CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: July 8, 2020

/s/ Sean T. Greecher
Pauline K. Morgan, Esq. (No. 3650)
Sean T. Greecher, Esq. (No. 4484)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: pmorgan@ycst.com
        sgreecher@ycst.com

and

James L. Bromley, Esq. (*pro hac vice*)
Jonathan M. Sedlak, Esq. (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Email: bromleyj@sullcrom.com
        sedlakj@sullcrom.com

*Attorneys for Defendant Lion/Hendrix Cayman Limited*